BOUTWELL, et ux. *v.* MERRITT

No. 40679          February 24, 1958          100 So. 2d 604

*E. K. Collins,* Laurel; *Bidwell Adam,* Gulfport; *Jackson & Ross,* Jackson, for appellants.

*Deavours & Hilbun,* Laurel, for appellees.

HALL, J.

The appellants are the parents of thirteen children, all of whom have married and moved away from home. They brought this suit against their daughter Mrs. Merritt and her son Bruce William Merritt seeking cancellation of a deed which they had executed to the daughter and her son and wherein they had reserved unto themselves a life estate. The appellants are approximately 80 years of age. The bill of complaint alleges that the defendants lived near them in Jones County and that the defendants induced them to execute the deed in question on a promise to support them and look after their needs and carry them to Church each Sunday and to town and other places of business where they might desire to go, and that the two defendants accompanied them to the City of Laurel to execute a contract without waiting to discuss the matter with the other children; that the supposed contract was dated July 9, 1953, but that the complainants did not learn until sometime later that they had executed a deed. The bill charged that the complainants were not familiar with legal documents and not trained in such business transactions, and that the wife was in poor health and the husband nearly blind, being unable to see or read any documents or any other thing; that they had great confidence in their said daughter and grandson and that they would not permit them to sign anything to take their lands away from them and would see that they were well cared for and well provided for so long as either of them lived. The bill charged that the defendants themselves had the papers in question drawn up and presented them to the complainants with the assurance that they were solely for the purpose of carrying out the oral agreement; that there was no consideration for the deed in question and that the same was procured by fraud and undue influence and the bill also charged that the complainants were mentally incompetent to execute the deed.

The defendants answered, and, in general, denied the allegations of the bill.

At the trial an amendment to the bill was dictated into the record charging fraud in more detail.

The complainants depended almost wholly upon their own testimony, which was in conflict in many particulars, but the record shows without dispute that the defendants did not have the deed in question prepared and did not induce the complainants to execute it, but that as a matter of fact on the day of the execution of the deed the complainants had the grandson carry them to Laurel and to the office of the chancery clerk. The daughter did not even go along and did not know the purpose of the visit to Laurel. When they arrived at the chancery clerk's office the complainants told the clerk that they wanted to convey the property to the daughter and her son because they had lived near them and had done more for them than any of their other children and they wanted them to have the place at their death.

The chancery clerk and two of his deputies testified that Mr. Boutwell did most of the talking and that the grandson had practically nothing to say. The clerk prepared the deed in question reserving the life estate to the complainants. It was typed by one of the deputies and this deputy read the instrument over carefully to both of the complainants in the presence of the clerk and another deputy, and they executed the deed but did not leave it for record. They carried it away with them and did not deliver it until about two weeks later and it was not recorded until about three years later.

The grandson at the time the deed was made was about 18 years of age and there is not one word of proof that either of the complainants ever looked to or relied upon him for any kind of business advice and there was a total failure to show any confidential relationship existing between them. In fact it was shown that Mr. Boutwell had been a school teacher and was a good business man, and other people relied upon him for advice. Notwithstanding the fact that his eyesight was very poor, he

was mentally alert at all times. Boiling the matter down, in short the proof in this case wholly failed to sustain any of the allegations of the bill, and at the conclusion of the trial the chancellor so held and dismissed the bill, from which action this appeal is taken.

The appellants make only one contention on this appeal and that is that the complainants did not intend to execute a deed but that they desired a will drawn and that there was a unilateral mistake in the execution of the deed. The question of a unilateral mistake was not alleged in the bill and was not presented to the lower court and was not passed upon by the lower court.

Under Section 676 of Griffith's Mississippi Chancery Practice, questions not raised in the trial court and preserved for review will not be noticed on appeal, and the trial court will not be put in error on any basis which he had no opportunity to pass upon. In the notes in Griffith there are cited numerous cases to support this position.

Furthermore, we do not think that the evidence would justify a finding that there was a unilateral mistake. In Section 589 of Griffith's Mississippi Chancery Practice it is said: "There is a strong presumption that parties who have reduced their agreement to writing have deliberately, adequately, and honestly expressed their agreement therein. The evidence to reform such an instrument, to correct alleged mistakes therein, or to vary the terms thereof must be clear and convincing,—so clear as to be almost free from doubt." Considering the testimony of the appellants themselves, it is not clear and convincing and it is not so clear as to be almost free from doubt. We conclude therefore that the decree of the lower court should be affirmed.

Affirmed.

*McGehee, C. J.,* and, *Lee, Holmes* and *Ethridge, JJ.,* concur.